I was not sure if this was working or not. My hearing is terrible, so I apologize. My name is Philip Cowan and I represent Mr. Kevin Massey. This case began when a group of vigilante types went down to the border near Brownsville, Texas and wanted to act as militiamen to protect the border against the influx of aliens who weren't documented. In the process, a federal agent shot at Mr. Forster, one of the co-defendants in the case. As a result of that, Mr. Forster and Mr. Massey were detained and their rifles were taken away from them. Later, they were let go. The agents did a little bit more investigation. They found out that Mr. Forster and Mr. Massey had been convicted of a felony in the past. The agents went to a motel not very far away and called Mr. Massey out from his hotel room. He came out and they found a gun on him, a pistol on him, and plus some other weapons in his possession in the motel room. On appeal, I've argued essentially three things. One of them is sufficiency of the evidence. The second thing is I think that Mr. Massey, I'm not sure about Mr. Forster, Mr. Massey had regained his rights to possess a weapon before the state changed the law. I see there's an ex post facto issue there, which I believe would be preserved under the Tenth Amendment in terms of the state would be prohibited from using, going back and taking away the rights after the fact. But I think the issue in this particular case is the tension between the history of the restriction and Heller and then the new analysis which this court set up at National Rifle Association versus ATF a few years ago. The basis for Judge Hainan dismissing the case, not dismissing the indictment, was simply because Mr. Massey did not fit into those categories of law-abiding citizens. The government in its brief pointed out, and very ably, that most of the circuits have looked at what they call the presumptively lawful regulatory measures, which are referenced in Heller as allowing the government to restrict the right of a gun, or gun possession by a felon. And the problem I had in dealing with this issue is I can't see any distinction between the First Amendment with the four freedoms, the Third, Fourth, Fifth, and Sixth Amendment, which I believe felons would have all those protections, and the Second Amendment, which is now recognized as fundamental. And for some reason, because we always took away a person's right in the past, when we said it wasn't a fundamental right, now we can go ahead and continue to do it because we have all these old precedents, which were based on totally different criteria than what Heller came up with. And this is the problem I have with this. I don't think that the court in Brownsville had to rely on National Rifle Association in the case in the ruling, but I think the court should have gone and said you can't exclude on that basis solely, and that it should have gone to the second point in saying that you have to have heightened scrutiny over there, and can we really take away a person's right over here solely because they're a felon? I don't think they could. In this court's precedent in the past with Emerson, this court had an unusual opinion where they recognized a limited Second Amendment right as a personal freedom. And the cases which the government points out in this instance in their brief that rely on Emerson in saying that despite the fact that you have a fundamental right, do not have the strength of Heller behind them. If you take Emerson, which doesn't go as far as Heller, and you put it into the older cases which used Emerson and said 922G1 was okay, I think you're going to have a situation where you'd probably come up with a National Association case which later took place. I would ask you to keep in mind that National Association case is a case where a class of persons were being denied the right to own a weapon, which was 18 to 21-year-olds. And I think that would be a different situation than a situation with a felon, which 18 to 21-year-olds, it's not so much traditionally, but the government can set a point at which a person decides when they're going to vote, and they haven't attained full rights at the time. A person who has been convicted of a felony, assuming, let's say in Mr. Massey's case, he's an adult, there's no issue there, and just solely saying he's suddenly now unworthy because he made an error when he was young, and he pled guilty, and he was convicted of the felony of burglary, and he's forever denied the right. It would be going a little bit too far. Mr. Cowan, what is in the record dealing with any restoration of rights to your client? Texas does restore certain rights to felons. Is there anything in the record showing he went through the process of having rights restored in Texas? My argument, Your Honor, is this. There would be nothing in the record that would say he officially got a restoration of rights. He wasn't pardoned or anything, but he was convicted prior to 1993, and 1993, the law changed the timber that year, and he had his full rights at that time. The legislature passed a case, and I believe there's Mills, a case I point to. They came out and said initially they went for the fellow who had lost his rights and said, oh, no, you can't convict him. They came back and said, yes, you can, because it's an element of the crime. At that time, he had his rights back, and my second issue deals with that, which is the state of Texas under the Constitution of the United States would be prohibited from taking away his rights. Unless he's pardoned, this is a right he loses for the rest of his life, you know, just by legislative fiat. And I had a real problem with the state just unilaterally doing that. And this happens in a lot of contexts in Texas under criminal law. I know we have it in the cases of the sexual offender issues, but those are different types of cases because you're trying to protect the public. One of the cases that the government points out, United States v. Moore, and looking at this, has a list of almost all of the circuits and the cases that deal with saying 922 G1 is okay because it falls within Justice Scalia's dicta with a presumptively lawful regulatory restriction of a felon's right. I believe that this court's opinion and National Association changed that rule, and this is the only circuit right now that is saying, and I believe within the opinion itself, it comes out and it's questions, you know, whether those cases are actually correct. And if you use a two-part analysis in the National Association, and we're taking a person's gun right away forever, okay, solely because, and forget Mr. Massey for a second, just take somebody who wrote a hot check and wound up pleading guilty because they didn't have a lawyer that tried to work out some other way of dealing with this thing, and they wound up getting convicted for a hot check. That person will lose the right forever to be able to do it. It to me made no sense when you're just taking all felons and classing them as unworthies. And I point out in my brief that I thought this was some very dangerous precedent to do this because I'm not sure if you all are familiar with Albert Camus, the rebel. And in the rebel, it's an interesting thing, but he said when governments decide who can live and who can die, they can set up the criteria for determining who should live and who should die. And that's a real far extension of this particular process, but creating classes of unworthies really disturbs me as a person. Myself, whether it's not relevant here, I'm not a gun person. I don't understand it. But if you have a fundamental right and you should be able to exercise it, I think the government has to have a much stronger basis for taking away your right, a much, much stronger basis for taking away your rights than merely the fact that you made a mistake once in your life and forever you're going to be classed as some kind of unworthy. I don't think that that's something that could legitimately be done. One issue I do want to clarify on my first issue in terms of the premises argument, I think if the government's argument in this brief was that Mr. Massey was not on the premises with one of the guns, so therefore the rest of the argument would be irrelevant because he could be found guilty of one of these things. I think that Mr. Massey was induced out by the government, by agents, to come out, and if federal agents tell you to come out of your room, you come out of your room. And you don't argue with them. Whatever you have in your pocket, you leave and you go. And I think he was within the premises and their enticement pulling him out shouldn't allow them to be able to use that possession in the parking lot as a way to find him guilty there. I don't know if you have any more questions on this particular issue here. You saved time for rebuttal, Mr. Cowan. I'm sorry? You saved time for rebuttal. Okay, I will. Thank you very much. Good morning, Your Honors. May it please the Court, John Reed on behalf of the United States. Your Honors, Mr. Massey's conviction must be affirmed by this Court because all of his arguments, at least as to the constitutional claims, have been considered and rejected by this Court. To the extent he relies on a state law claim for the right to possess firearms, his arguments have also been considered by the state courts and have been rejected as far as what constitutes a permissible condition of a what constitutes a permissible felon possession of a firearm under state law. What is the law in Texas? Is there any statutory procedure or other procedure for a felon who has served the sentence to pursue restoration of rights? Texas follows an automatic reinstatement of some rights once your conviction and sentence has been completed. That is the only basis? There's no discretion or other procedure that could be exercised, discretion that could be exercised by someone if an application is made? Well, I believe the felon could always apply for a pardon from the governor, but as far as how does a felon obtain the right to possess a firearm under state law, it's an automatic process under state law. A felon as currently, as under current law, a felon in Texas cannot possess a firearm anywhere for the first five years following the completion of his sentence. Afterward, he is permitted under state law to possess a firearm on the premises where he lives. As I pointed out in my brief, the State courts have construed premises where he lives for purposes of this statute to mean one's residence or home. Even if it were broader than that, as I point out in my brief, it must be where one lives. Mr. Massey was not living on the Sable Palms Nature Sanctuary at the time that he was possessing the rifle that formed the basis of count two. He was not living in the parking lot of the motel when he was in possession of the pistol that was found on his person for purposes of, I believe that was count three, that was count three. As far as Mr. Cowan's argument that he was induced to come out of the motel, of course, he didn't have to come out armed. That was his choice to have a firearm on his person at that time. But regardless, putting aside whether or not he had the right to possess a firearm under state law, a limited right, it does not matter for purposes of 922G unless his core civil rights have been restored. That's United States v. Thomas and United States v. Huff. I've pointed out a piece of it. The Supreme Court approval, I mean, these three rights that we have identified following other circuits, right to vote, whatever the others are, as the only relevant rights, any Supreme Court imprimatur or approval on top of that? Is it just circuit law? I can't think of any Supreme Court cases that have addressed that, Your Honor. Well, I'm not, this panel is not empowered to change the list, but it does seem to be a list that is not necessarily the only list that some court could come up with. I fully agree with Your Honor. And I would point out, I think that list, the right to vote, hold public office and serve on a grand jury, that's relevant for purposes of whether or not his conviction qualifies as a predicate offense subjecting him to prosecution under 922G1. I will grant you, I don't know that that automatically precludes him from making a constitutional claim, as he has done. He can still argue that it violates his Second Amendment rights or it violates Congress's ability to regulate under the Commerce Clause. Those arguments have all been foreclosed by this Court. His principal reliance is Heller and National Rifle Association. In the United States v. Anderson, which is a post-Heller case, Judge Smith, joined by Judge Southwick, said Heller does not change Fifth Circuit law. Heller did not change Darrington, which rejected the same Commerce Clause arguments that Mr. Massey is putting forth today. It rejected the Second Amendment claims that he's putting forth. As this Court knows, under the rule of orderliness, this Court is bound by Anderson. National Rifle Association didn't change Circuit law. National Rifle Association recognized, in footnote 7, I believe, that this Court had already held 922G1 to be constitutional. It adopted, granted it adopted a two-part test for examining firearms regulations going forward, but it never expressed doubt as to its prior precedent. Anderson, Darrington, Daugherty, Emerson, Kubin, Rawls. I mean, the list goes on and on of the cases from this Court that have upheld 922G. Now, Mr. Massey's argument is that somehow Heller and National Rifle Association has put a gloss on that analysis that requires this Court to reexamine its precedent. But I think it's important to remember that in Emerson, this Court recognized an individual right to bear arms long before the Supreme Court did. And I think what Emerson said is completely consistent with what Justice Scalia later said in Heller, and that is, although there is a fundamental right of individuals, law-abiding, responsible adults, to possess firearms for purposes of defending themselves and their home, that right is not unlimited. It's subject to reasonable restrictions, including the prohibition against felons from possessing firearms. Well, in Heller, the Court specifically said that nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill. I don't know why that doesn't answer the question by itself. I think it does, Your Honor. I'm just pointing out that this Court said the same thing, maybe slightly different wording, in Emerson. And so Heller didn't change Fifth Circuit precedent. That's my only point there. I fully agree with you that Heller does decide that because that's what Your Honor said in Anderson and cited that very language from Heller in rejecting a post-Heller Second Amendment challenge. As far as an ex post facto law goes, Mr. Massey is not being punished for any conduct that was legal at the time it occurred. He's not being punished for his prior burglary convictions, of which he actually has two on his record. This is not a hot check case. Mr. Massey has a serious, two serious convictions on his record. But regardless, this Court's precedent says felons may be prohibited from possessing firearms, and nothing in National Rifle Association changed that. Again, it adopted this two-part test, but it said longstanding prohibitions, including prohibition against felons, would likely fail under Step 1 because prohibiting felons from possessing firearms does not fall within the core right of the Second Amendment. I fully agree with that. So that should be the end of it? I'm sorry, Your Honor? So that should be the end of it? I believe that is the end of it. Okay. I don't have a lot more to say. If Your Honors do not have any further questions, we ask that the judgment be affirmed. Thank you, Mr. Reed. Mr. Cowan, you said time for rebuttal. We either have a fundamental right to own a weapon or we don't have a fundamental right to own a weapon. I think Heller made the determination that we do. It is much greater than Emerson did. Well, what do you do with the quotation that I gave from Heller a minute ago? Would you like me to repeat it? No. What I don't want the courts to do, and I don't mean to sound like I'm presuming, but if you take arbiter dicta and then you graft it into a rule, Justice Scalia said, we're not dealing with this traditional, presumptively lawful issue here. We're just saying you got the right. It's an issue for another day. And then suddenly now we're doing just the opposite of what Justice Scalia is saying. We are making his dicta the rule. And we're applying it and we're going to go apply it in every circuit in the United States. And it seems the way it was happening. And I think it probably would be a dead issue except that National Association set up a slightly different criteria. Looking at it and saying, and I believe we meet the first criteria just because you lose your right to possess a weapon. You're an individual. You can no longer own it. You can no longer possess a weapon. You lose it completely. And it's grafting the comment into the rule, I don't believe is the way to do that. I just don't feel very comfortable with it. So I asked a question a little earlier and there was a comment, I don't remember exactly the words that were used, about proving that a person was not entitled to possess a weapon in Texas and whether that was proved at trial. And on page 24 of my brief, I do raise that issue. Not very superlatively briefed or whatever, but I couldn't find anything here where somebody came up and said, he's lost the right. He can no longer own a weapon. It's there. It's just, I think, something that was kind of presumed in this trial. And this court may say, well, we're going to look at the documents that the federal judge had before him to show that he was a convicted felon and make the presumption that he's lost the right and he never regained it. But I think that the government had a greater burden in this case than did this work on a presumption. And to say, he's been convicted, it's a felony, he loses his right. An argument I made in this brief is that he lost his rights, yes, but he got them back. And then later on they were taken away. And I think that issue should have been dealt with at this trial. It's a bench trial, but I don't think we can overlook it. Federal judges are not perfect. They can make mistakes effectually. And here, I just think you cannot presume. Justice Haynen, I would say, and I deal with him all the time, a very good judge. But I don't think we should just presume that he lost his rights. Were you trial counsel? I'm sorry? Were you the trial counsel? No, I was not. It was Luis Sorolla, and prior to that it was Ed Saganowich. And Luis Sorolla, he did, in my opinion, a very good job of dealing with everything possible. He's got everything there but the kitchen sink in terms of the arguments. And I was very grateful to the government for arguing things that really Luis Sorolla did not bring up, which allowed me to be able to make some of the arguments I have here. With that, unless you all have any more questions, I would thank you for allowing me to come here. It's a great honor for me to be here and to be . . . I've been here several times, and I thank you very much for the honor of being able to serve before this court. Thank you, Mr. Cowan. Your case is under submission.